<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOAO S., <br><br> *Plaintiff*, <br><br> v. <br><br> LEE DUDEK,[1] <br> Commissioner of Social Security, <br><br> *Defendant.* | Civil Action No. 24-04562-JKS <br><br> **OPINION** <br><br> March 26, 2025 |

**SEMPER**, District Judge.

Before the Court is *pro se* Plaintiff Joao S.'s ("Plaintiff") appeal of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for supplemental security income ("SSI"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). Having considered the submissions of the parties without oral argument, for the reasons set forth below, this Court finds that Administrative Law Judge Joshua Menard's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

**I.   BACKGROUND**

On December 21, 2021, Plaintiff protectively filed an application for SSI, alleging disability beginning on January 1, 2019 due to anxiety, depression, attention-deficit hyperactivity

---

[1] Lee Dudek became Acting Commissioner of the Social Security Administration ("SSA") on February 19, 2025. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Mr. Dudek is substituted as Defendant in this suit. *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

disorder (ADHD), bipolar disorder, and short-term memory issues. (ECF 7-2 (Transcript of Proceedings ("Tr.")) at 18, 88, 235-42.)[2] The claim was denied initially on March 24, 2022 and upon reconsideration on July 7, 2022. (*Id.* at 18.) Thereafter, Plaintiff filed a written request for hearing, which was received on August 30, 2022. (*Id.*) On February 23, 2023, Administrative Law Judge ("ALJ") Joshua Menard held a hearing. (*Id.*) On April 11, 2023, ALJ Menard issued a decision finding Plaintiff not disabled. (Tr. at 18-37.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review (Tr. at 1-6.) On April 4, 2024, Plaintiff initiated this appeal. (ECF 1.)

In his appeal, Plaintiff asserts that he "disagree[s] with the decision in [his] case because it is not supported by substantial evidence. (ECF 8 at 1.) Plaintiff also submitted a letter from his mother describing Plaintiff's mental health issues throughout his lifetime and inability to maintain employment. (ECF 8-1 at 1-3.) Defendant Commissioner filed a responsive brief asserting that all of ALJ Menard's findings are supported by substantial evidence. (ECF 13.) The Court considers whether substantial evidence supports a finding that Plaintiff was not disabled from December 21, 2021, through April 11, 2023.

## II.     LEGAL STANDARD

### a.  Standard of Review

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g). On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The

---

[2] Plaintiff has a history of outpatient treatment with records from 2018 indicating stable mental status examination when taking psychotropic medications as prescribed. (Tr. at 32.)

Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401(1971); *see also Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003).[3] To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

### b. The Five-Step Evaluation Process

To determine whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 480 (3d Cir. 2007). If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ determines whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of

---

[3] The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97 (2019).

3

receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

At step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; *see Wright v. Comm'r of Soc. Sec.*, No. 16-9520, 2019 U.S. Dist. LEXIS 13893, at *10 (D.N.J. Jan. 29, 2019). An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

At step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to step four.

Before engaging in the step four analysis, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can perform past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At steps one, two, and four, the claimant bears the burden of persuasion.[4] At step five, however, the burden shifts to the ALJ to determine whether the claimant can perform an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this step in the analysis, the Social Security Administration is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

---

[4] Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings[.]" *Sykes v. Apfel*, 228 F.3d 259, 263 n.2 (3d Cir. 2000).

## III. DISCUSSION[5]

ALJ Menard properly applied the five-step disability test before determining Plaintiff was not disabled. His findings are supported by substantial credible evidence, and there is no basis for remand or reversal because he appropriately considered all of Plaintiff's medically supported complaints. (*See* Tr. at 18-37.)

### A. The ALJ's Decision

In issuing his decision, ALJ Menard considered the entire record. (Tr. at 20.) At step one, he found that Plaintiff[6] had not engaged in substantial gainful activity since filing his application on December 21, 2021. (Tr. at 20.) This finding is supported by the record.[7] (Tr. at 202-22.) At step two, ALJ Menard found Plaintiff had the following severe impairments: bipolar disorder; anxiety; attention deficit hyperactivity disorder (ADHD); and addiction disorder. (*Id.*) ALJ Menard also found Plaintiff had a non-severe physical impairment of foot pain status-post left foot fracture. (Tr. at 20-21.) He based these findings upon a detailed review of medical evidence and the hearing testimony. (*Id.*) Both step one and two findings were supported by substantial evidence.

At step three, ALJ Menard found that the severity of Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.11. (Tr. at 21.) ALJ Menard supported his conclusions with substantial evidence, including Plaintiff's function report, records from consultative exams, hearing testimony, and psychiatric evaluations. (Tr. at 21-23.) In making this step-three finding, ALJ Menard considered

---

[5] Prior to addressing the parties' arguments, the Court notes that Plaintiff has not complied with Local Rule 9.1(e). Plaintiff has not submitted a brief that contains a meaningful "statement of the issues presented for review," a statement of facts, or an argument section that is "divided into sections separately treating each issue." L. Civ. R. 9.1(e)(5)(A)-(D).

[6] Plaintiff was born on January 25, 1997. (Tr. at 35.) He was twenty-four years old on the date the application was filed. (*Id.* at 20.)

[7] Plaintiff's wage records showed last reported earnings of $240.00 in 2019. (Tr. at 217.) There is no evidence of work activity on or after the application date. (Tr. at 202-22; Hearing Testimony.)

the "paragraph B" criteria.[8] (*Id.*) He found that in understanding, remembering, or applying information, Plaintiff has a mild limitation. (*Id.*) While Plaintiff reported that he needed special reminders to take care of his medications, his activities of daily living indicated an ability to participate in a variety of activities, including taking care of his son and emotional support dog, dressing and bathing himself, cleaning, doing laundry, traveling by walking, going out alone, managing his money, reading, watching television, and playing video games. (*Id.*) Plaintiff has a driver's license and can operate a motor vehicle. (Tr. at 22.) ALJ Menard found Plaintiff had a mild limitation in interacting with others. (*Id.*) While Plaintiff reported difficulty getting along with others, his activities of daily living indicated an ability to care for his son, spend time with others, and go to the corner stores, Lexington diner, and smoke shop on a regular basis. (*Id.*) While mental status examinations revealed Plaintiff had angry, irritable, and depressed mood, and affect congruent with mood, he was otherwise cooperative. (*Id.*) ALJ Menard explained that Plaintiff's speech was organized, coherent, and goal directed. (*Id.*) Plaintiff was well-groomed, appropriately dressed, and appeared his stated age. (*Id.*) Plaintiff's behavior was calm and cooperative. (*Id.*) He made good eye contact. (*Id.*) In considering Plaintiff's level of activity and mental exams, ALJ Menard found no more than a mild limitation in interacting with others. (*Id.*)

Plaintiff reported he had problems with concentration and completing tasks. (*Id.*) However, ALJ Menard concluded that the record indicated Plaintiff was able to concentrate sufficiently to participate in the wide range of activities of daily living listed above. (*Id.*) Furthermore, ALJ Menard considered the psychological consultative examination and explained that during the examination, Plaintiff's thought processes were logical, coherent, and goal directed. (*Id.*) He was

---

[8] To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. (Tr. at 21.) An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. (*Id.*) A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. (*Id.*)

7

able to maintain attention and concentration, and he had no perceptual disturbances. (*Id.*) No delusions were elicited, and Plaintiff denied having auditory or visual hallucinations. (*Id.*) Consequently, ALJ Menard found no more than a moderate limitation in concentrating, persisting, or maintaining pace. (*Id.*)

Moreover, ALJ Menard found that Plaintiff experienced a mild limitation in adapting and managing himself. (*Id.*) On mental status examinations, Plaintiff denied hallucinations, delusions, suicidal ideations, and homicidal ideations. (*Id.*) He was also alert and oriented, with adequate insight and judgment. (*Id.*) Since Plaintiff's application date, there were no periods of decompensation or psychiatric holds. (*Id.*) Plaintiff had no emergency department visits or inpatient hospitalizations due to mental health concerns. (*Id.*)

Because Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation, ALJ Menard found the paragraph B criteria were not satisfied. (*Id.* at 23.)[9] Accordingly, ALJ Menard's step three findings were supported by substantial evidence.

At step four, ALJ Menard engaged in an extensive analysis pertaining to Plaintiff's residual functional capacity ("RFC"), and he followed the proper two-step process to determine Plaintiff's RFC. (Tr. 23-35); 20 C.F.R. §§ 404.1529, 416.929. At the first step, ALJ Menard concluded that Plaintiff's "medically determinable impairments could reasonably be expected to" produce his alleged symptoms. (Tr. at 24.) However, at the second step, ALJ Menard found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*)

---

[9] Furthermore, ALJ Menard considered whether the paragraph C criteria were satisfied. (*Id.*) ALJ Menard found that the evidence failed to establish the presence of paragraph C criteria since Plaintiff was able to maintain many activities of daily living. (*Id.*)

In developing Plaintiff's RFC finding, ALJ Menard appropriately considered all the relevant evidence, including medical records, medical source opinions, and Plaintiff's subjective allegations and description of his own limitations. 20 C.F.R. § 416.945(a). ALJ Menard detailed Plaintiff's entire medical history and compared his medical history to his subjective statements. (Tr. at 21-35.) ALJ Menard explained that the medical evidence of record demonstrated that Plaintiff has bipolar disorder; anxiety; attention deficit hyperactivity disorder (ADHD); and addiction disorder, but the objective medical evidence of record demonstrated that Plaintiff's impairments were neither as debilitating nor disabling as alleged. (Tr. at 30.) ALJ Menard explained that mental status examinations in the medical records showed some limitations, but did not support that the claimant would have limitations greater than those given in the RFC. (*Id.*) ALJ Menard noted that Plaintiff does not receive a level of collateral support or mental health treatment that is usually associated with chronic or debilitating mental illness. (*Id.*) ALJ Menard explained that the mental health treatment notes indicated that Plaintiff demonstrated functional abilities consistent with moderate limitations. (*Id.*) ALJ Menard explained that Plaintiff was generally independent in his activities of daily living from a mental health perspective. (*Id.*)

In addition to medical records, ALJ Menard also considered the medical opinion evidence and prior administrative medical findings. (Tr. at 31-35.) He considered the findings from state agency psychological consultants George Grubbs, Psy.D. and Melanie Callender, Ph.D., who each found that Plaintiff remained capable of understanding and executing simple instructions, performing simple, routine tasks, sustaining adequate concentration, persistence, and pace, and adapting adequately to routine work settings. (Tr. at 31-32.) ALJ Menard found these findings persuasive because they were supported by clinical findings and consistent with the longitudinal record. (Tr. at 32 (citing Tr. at 423, 504-07, 816-17, 820-21).) ALJ Menard also considered a 2022

consultative psychological evaluation with Dr. Eric Kirschner. (Tr. at 29, 33, 439-44.) During the exam, Plaintiff reported mood instability, anxiety, psychomotor agitation, depression, and irritability. (Tr. at 29, 33.) However, Dr. Kirschner noted that Plaintiff exhibited logical and goal-oriented thought processes, fair insight and judgment, and intact attention and concentration. (Tr. at 29, 33.) Dr. Kirschner concluded Plaintiff would have difficulty learning new tasks and performing complex work, but that he was capable of understanding and following simple instructions, performing routine tasks independently, and sustaining sufficient attention and concentration for basic work-related activities. (Tr. at 29, 33.) ALJ Menard found these opinions persuasive because they were supported by a thorough mental consultative examination and were consistent with the longitudinal record. (Tr. at 33 (citing Tr. at 423, 505-06).) Furthermore, ALJ Menard considered the opinions of Plaintiff's treating provider, Syed Zaidi, M.D., who opined that Plaintiff had marked mental limitations and would be absent from work more than four days each month due to his impairments. (Tr. at 34 (citing Tr. at 419-20).) However, ALJ Menard found these opinions were not persuasive because they were not supported by Dr. Zaidi's own clinical findings (Tr. at 34 (citing Tr. at 423-38, 458-508, 816-17)), and they were inconsistent with the overall record (Tr. at 35 (citing Tr. 439-44, 818-24)).

Moreover, ALJ Menard considered Plaintiff's medication management appointments. At Plaintiff's medication management appointments in February 2022, March 2022, and July 2022, mental status examinations were unremarkable. (Tr. at 27 (citing Tr. at 423, 505, 506).) In February 2023, Plaintiff experienced increased anger, outbursts, and memory issues when he reported he was not compliant with treatment or medications. (Tr. at 28 (citing Tr. at 816).) The same month, Plaintiff presented for an initial psychiatric evaluation. (Tr. at 28 (citing Tr. at 818).) While he had an angry, irritable, and depressed mood, the mental status exam showed he was calm and

10

cooperative with good eye contact, intact attention and concentration, intact recent and remote memory, regular speech, good fund of knowledge, linear thought process and intact associations, and fair insight and judgment. (Tr. at 28 (citing Tr. at 820-21).)

ALJ Menard acknowledged Plaintiff's reports of difficulty with memory, concentration, understanding, completing tasks, and getting along with others (Tr. at 24 (citing Tr. at 265-73)), as well as his testimony regarding mood swings, memory loss, and depression (Tr. at 24 (citing Tr. at 53-55)). ALJ Menard further considered Plaintiff's mother's reports that Plaintiff had issues with memory, completing tasks, concentration, understanding, following instructions, and getting along with others. (Tr. at 24 (citing Tr. at 315-16).) Plaintiff's mother further reported that Plaintiff did not properly take his medication, had issues with aggression and sleeping, and did not handle stress well. (Tr. at 24 (citing Tr. at 315-16).) ALJ Menard also acknowledged Plaintiff's testimony that he receives medication management, but did not seek any counseling (and has not since childhood). (Tr. at 24 (citing Tr. at 55-57).)

ALJ Menard considered this testimony against the medical evidence of record, and found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not consistent with that evidence. (Tr. at 24-25.) While mental status exams showed some limitations, they did not support the disabling limitations alleged by Plaintiff. (Tr. at 30.) Despite the alleged limitations, ALJ Menard stated that Plaintiff engaged in a robust level of daily activities, including taking care of his son and a dog, doing household chores, going out alone, managing his finances, shopping on the computer, reading, watching television, spending time with others, and going to local stores and diners on a regular basis. (Tr. at 30-31.) *See* 20 C.F.R. § 416.929(c)(i) (in evaluating subjective complaints, the ALJ considers a claimant's daily activities). The ALJ further explained that during the period at issue, there was no evidence of Plaintiff

11

presenting to an emergency department for acute symptoms, no inpatient hospitalizations, and his symptoms remained stable when he was on medication treatment. (Tr. at 27.)

Accordingly, ALJ Menard's step four findings were supported by substantial evidence.

At step five, ALJ Menard found that in light of Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform jobs existing in significant numbers in the national economy. (Tr. at 35-36.) In making this determination, ALJ Menard considered the aforementioned factors along with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. (*Id.*) ALJ Menard asked a vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. (Tr. at 36.) The vocational expert testified that given all these factors, Plaintiff would be able to perform the requirements of representative occupations such as:

> 1. Hand Packager (DOT#920.587-018)-medium, unskilled, SVP 2, approximately 72,237 positions nationally.
>
> 2. Marker (DOT#209.587-034)- light, unskilled, SVP 2, approximately 136,791 positions nationally; or
>
> 3. Housekeeping Cleaner (DOT#323.687-014)-light, unskilled, SVP 2, approximately 177, 389 positions nationally.

(*Id.*) Accordingly, ALJ Menard concluded Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such that a finding of "not disabled" was therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines. (*Id.*) ALJ Menard properly considered the vocational expert's testimony, and his step five finding was likewise supported by substantial evidence.

This Court is required to give deference to the ALJ's findings if such findings are supported by substantial evidence in the record. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). ALJ Menard's determination that Plaintiff was not disabled under the Act is supported by

substantial credible evidence in the record, including medical records, medical source opinions, and hearing testimony.

IV. **CONCLUSION**

Because the Court finds that ALJ Menard's factual findings were supported by substantial credible evidence in the record and his legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

>*/s/ Jamel K. Semper*
>**HON. JAMEL K. SEMPER**
>**United States District Judge**